UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICKEY SMITH,

        Petitioner,

v.                                Case No. 3:21-cv-208-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

---

## ORDER

### I. Status

Petitioner Rickey Smith, an inmate of the Florida penal system, initiated this action on February 26, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Smith challenges a 2011 state court (Duval County, Florida) judgment of conviction for burglary of a dwelling. He raises four grounds for relief. See Petition at 6-43. Respondents have submitted a memorandum in opposition to the Petition (Response; Doc. 15). They also submitted exhibits. See Docs. 16-1 through 16-

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For all pleadings and exhibits filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

1

46. Smith filed a brief in reply (Reply; Doc. 19) with exhibits (Docs. 19-1 through 19-5). This action is ripe for review.

## II. Relevant Procedural History

On April 5, 2010, the State of Florida charged Smith by information in Duval County Case Number 2010-CF-2600 with burglary of a dwelling. Doc. 16-2 at 2. At the conclusion of a trial, a jury found Smith guilty of the charged offense. Doc. 16-3 at 2. On March 29, 2011, the trial court designated Smith as a habitual felony offender and sentenced him to a term of imprisonment of thirty years, with a minimum mandatory term of fifteen years as a prison release reoffender. Doc. 16-4 at 2-7. Smith appealed, raising a single argument – that the trial court erred in denying his motion for a judgment of acquittal.[3] See Doc. 16-7 at 12-14. The First District Court of Appeal (First DCA) per curiam affirmed Smith's conviction and sentence on January 9, 2012, see Doc. 16-9 at 2, and issued the mandate on January 25, 2012, see Doc. 16-10 at 3.

### A. Rule 3.850 Motion

On October 4, 2012, Smith filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). See Doc. 16-11. In his Rule 3.850 Motion, Smith alleged his counsel was ineffective when

---

[3] During the trial, the State presented evidence that Smith's blood was found inside the burglarized home. See Doc. 16-6 at 457-62. In his motion for judgment of acquittal, Smith argued that the State failed to prove the blood was left at the time of the burglary. See Doc. 16-7 at 12.

he: (1) misadvised Smith regarding the State's plea offer and the maximum sentence he could receive; (2) failed to call a utility company employee to testify that the electricity was shut off in the home at the time of the burglary in order to establish Smith's defense theory that the house was abandoned; (3) failed to call one of the neighbors, David Russell, as a defense witness; (4) argued the wrong defense theory during trial; (5) failed to object to the admission of certain photographs at trial; and (6) failed to investigate whether the record on direct appeal was complete. Id. The circuit court struck grounds two and three of the Rule 3.850 Motion as insufficiently pled, and granted Smith leave to amend those two grounds. See Doc. 16-20 at 22-24. Smith filed an amended Rule 3.850 Motion addressing those two grounds. See Doc. 16-13. After holding an evidentiary hearing, the circuit court denied the Rule 3.850 Motion, as amended, on July 5, 2016. See Doc. 16-19 at 2-11. The First DCA per curiam affirmed the denial of relief without a written opinion on December 13, 2017, and issued the mandate on January 10, 2018. See Doc. 16-22 at 4-5.

## B. Second Rule 3.850 Motion

While Smith's appeal of the denial of his Rule 3.850 Motion was pending before the First DCA, Smith filed a petition for writ of mandamus in the Florida Supreme Court. See Rickey L. Smith v. State of Florida, No. SC2017-0381 (Fla. Mar. 6, 2017). In his mandamus petition, Smith sought to compel the First DCA to issue a ruling on a petition for habeas corpus that he gave to

3

prison officials for mailing on January 20, 2014. Id.  The Florida Supreme Court ordered the First DCA to respond to Smith's mandamus petition. See Doc. 16-26. In a response filed on April 12, 2017, the First DCA represented that it had no record of having received Smith's January 20, 2014 petition for writ of habeas corpus. See Smith, No. SC17-381, Response of the First District Court of Appeal to the Petition for Writ of Mandamus (Fla. Apr. 12, 2017). On May 18, 2017, the Florida Supreme Court denied the petition for writ of mandamus without prejudice to Smith re-filing his January 20, 2014 petition for writ of habeas corpus in the First DCA. See Doc. 16-22 at 2. Smith re-filed the petition for habeas corpus, and on June 30, 2017, the First DCA transferred the petition to the circuit court for its consideration. See Doc. 16-31 at 7.

The circuit court construed the re-filed petition for habeas corpus as a motion for postconviction relief under Rule 3.850 (Second Rule 3.850 Motion) and treated it as having been timely filed on January 20, 2014. See Doc. 16-28. Upon initial review, the circuit court found the Second Rule 3.850 Motion to be facially insufficient but granted Smith leave to amend. Id. at 3-4. In his amended Second Rule 3.850 Motion, Smith argued that his trial counsel was ineffective for failing to: (1) object to an allegedly erroneous jury instruction regarding possession of recently stolen property; and (2) move for a judgment of acquittal on the basis of Smith's trial testimony that he had consent to enter the home. See Doc. 16-30. On September 26, 2018, the circuit court denied the

4

amended Second Rule 3.850 Motion. <u>See</u> Doc. 16-31 at 2-6. On August 22, 2019, the First DCA per curiam affirmed the denial, <u>see</u> Doc. 16-35, and on November 7, 2019, the court issued the mandate, <u>see</u> Doc. 16-37.

### C. Rule 3.800 Motions

On December 30, 2019, Smith filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800. <u>See</u> Doc. 16-38 at 10-15. The circuit court dismissed the Rule 3.800 motion on February 5, 2020, <u>id.</u> at 20-22, and denied Smith's motion for rehearing on March 3, 2020, <u>id.</u> at 91. The First DCA per curiam affirmed the dismissal on September 24, 2020, <u>see</u> Doc. 16-39 at 11-12, and issued the mandate on November 30, 2020, <u>see</u> Doc. 16-42.

On December 7, 2020, Smith filed a second Rule 3.800 motion, which the circuit court dismissed on March 31, 2021. <u>See</u> Doc. 16-46 at 23-25, 36-38. Smith filed the instant action under 28 U.S.C. § 2254 on February 26, 2021. <u>See</u> Doc. 1. During the pendency of this action, Smith filed a third Rule 3.800 motion on August 30, 2021, <u>see</u> Doc. 16-45, and the circuit court dismissed that motion on October 11, 2021, <u>see</u> Doc. 16-46 at 2-3.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Smith's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't

of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

7

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

> courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter,

9

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity,"

>the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

>Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> U.S. --, --, 130 S. Ct. 612, 617-18, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not

disturb a state-court decision denying the claim.
<u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.
Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the
deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds
another layer of deference — this one to a state court's decision — when we are
considering whether to grant federal habeas relief from a state court's
decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,
"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.
Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Smith argues his trial counsel was ineffective for failing
to request a jury instruction on the affirmative defense of consent. <u>See</u> Petition
at 6-16. Relying on his own trial testimony that he had consent to enter the
victim's home, Smith contends that he met his burden of production for the
defense, and, therefore, his counsel should have requested that the instruction
on consent be added to the trial court's jury instruction for burglary. <u>See</u>
Petition at 8-9.

Respondents assert that Smith failed to properly exhaust this claim, and
the claim is procedurally defaulted. Response at 29. According to Respondents,

Smith did not present this claim on direct appeal or in any of his postconviction proceedings, and he cannot now present it in a Rule 3.850 motion because it would be untimely. Id. Smith concedes that he failed to properly exhaust this claim, but argues that his failure to exhaust should be excused under Martinez because he was not represented by counsel during the time period when this claim could have been raised. Petition at 7. The record before the Court establishes that this claim is procedurally barred. Smith has not shown either cause excusing the default or actual prejudice resulting from the bar.[7] Moreover, Smith has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Smith's claim is not procedurally barred, Smith is not entitled to relief. "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986); Erickson v. Sec'y for the Dep't of Corr., 243 F. App'x 524, 528 (11th Cir. 2007) ("[E]rrors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair.") (citing Jones v. Dugger,

---

[7] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14. As discussed in the alternative merits analysis that follows, this ineffectiveness claim lacks merit. Therefore, Smith has not shown that he can satisfy an exception to the bar.

888 F.2d 1340, 1343 (11th Cir. 1989)).[8] On federal habeas review, to establish fundamental unfairness, the petitioner must demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); see also Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) ("Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, so infected the entire trial that the resulting conviction violate[d] due process.") (internal quotation marks and citation omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. In such cases, the burden on petitioner is "especially heavy." Id.

Florida law defines burglary as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless . . . the defendant is licensed or invited to enter[.]" § 810.02(1)(b)(1), Fla. Stat. "[C]onsent to entry is an affirmative defense to, rather than an essential

---

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

element of, burglary." <u>State v. Hicks</u>, 421 So. 2d 510, 510-11 (Fla. 1982). At the

time of Smith's trial, Florida's standard jury instruction for burglary stated:

> Give element 3 only if defendant meets his or her
> burden of production that he or she had an invitation
> or license to enter, or that the premises were open to
> the public. <u>See</u> <u>State v. Hicks</u>, 421 So. 2d 510 (Fla.
> 1982), and <u>State v. Waters</u>, 436 So. 2d 66 (Fla. 1983).
>
> > 3. [(Defendant) was not [licensed] [invited] to
> > enter the [structure] [conveyance].] [The
> > premises were not open to the public at the time
> > of the entering.]

<u>See</u> Florida Standard Jury Instruction (Criminal) 13.1 (2009).

The State charged Smith with burglary of a dwelling in violation of

Florida Statutes section 810.02(3)(b), as follows:

> [Defendant] on or between November 24, 2008 and
> December 1, 2008, in the County of Duval and the
> State of Florida, did unlawfully enter or remain in a
> structure, to-wit: a dwelling, the property of Hope
> Wigfall, with the intent to commit an offense therein,
> contrary to the provisions of Section 810.02(3)(b),
> Florida Statutes.

Doc. 16-2 at 2. At trial, Hope Wigfall (the victim) testified that she left her

home to visit family in another state during the week of Thanksgiving. Doc.

16-6 at 392. She testified that she locked her doors and windows prior to

leaving, and did not give anyone permission to enter her home while she was

out of town. <u>Id.</u> at 392-93. When she returned from her trip, she discovered her

side porch door was open and an old metal window in the back of her house

19

was busted with the metal "pried back" and the glass broken. <u>Id.</u> at 394-95. According to the victim, all other entryways to her home were equipped with burglar bar doors. <u>Id.</u> at 395. When the victim entered her home, she discovered the interior in shambles with several items missing. <u>Id.</u> at 396-97. The victim further testified that she did not know Smith and never gave him permission to be inside her home. <u>Id.</u> In addition to the victim's testimony, the State presented evidence that Smith's blood was found inside the victim's home. <u>Id.</u> at 457-62.

Smith testified in his own defense and admitted to being inside the victim's home during Thanksgiving week, but testified that a friend, Charles Holiday, gave him consent to enter the residence. <u>Id.</u> at 477-78. According to Smith, the victim hired Holiday to do carpentry work at her home, and Holiday asked Smith to assist him with the work. <u>Id.</u> Smith testified that they repaired some windows and doors at the victim's home, and that he cut himself while unloading wood from Holiday's truck. <u>Id.</u>

During closing arguments, Smith's counsel told the jury about Smith's consent defense:

> You heard from Mr. Smith that he had permission to be inside that house with Charles Holiday. He went in the house to do some work. He didn't enter that house with any intent to commit any crime. He told you how he cut himself on his finger right there bumping it up against the wall from some plywood and he dripped some blood inside the house. That's evidence that you

ladies and gentlemen can consider in deliberating your
verdict.

Id. at 523. After closing arguments, the trial court instructed the jury on

burglary as follows:

> To prove the crime of Burglary, the State must
> prove the following two elements beyond a reasonable
> doubt:
> 1. [Defendant] entered a structure owned by or
> in the possession of Hope Wigfall.
> 2. At the time of entering the structure,
> [Defendant] had the intent to commit an offense in
> that structure.
>
> You may infer that [Defendant] had the intent
> to commit a crime inside the structure, if the entering
> or attempted entering of the structure was done
> stealthily **and without the consent of the owner
> or occupant.**[9]
>
> The entry necessary need not be the whole body
> of the defendant. It is sufficient if the defendant
> extends any part of the body far enough into the
> structure to commit an offense therein.
>
> The intent with which an act is done is an
> operation of the mind and, therefore, is not always
> capable of direct and positive proof. It may be
> established by circumstantial evidence like any other
> fact in a case.
>
> Even though an unlawful entering or remaining
> in a structure is proved, if the evidence does not
> establish that it was done with the intent to commit

---

[9] Florida Statutes section 810.07(1) states that "[i]n a trial on the charge of
burglary, proof of the entering of such structure or conveyance at any time stealthily
and without consent of the owner or occupant thereof is prima facie evidence of
entering with intent to commit an offense." Fla. Stat. § 810.07(1).

an offense therein, the defendant must be found not
guilty of burglary.

Doc. 16-6 at 60 (emphasis added).

The above instruction tracks the language of Florida Statutes sections
810.02(3)(b) and 810.07(1). When viewed in the context of both the entire
charge and the trial record, it cannot be said the instruction infected the entire
trial to the point that the resulting conviction violated due process. See
Jamerson, 410 F.3d at 688. As such, Smith has not shown how the trial court's
burglary instruction rendered his trial fundamentally unfair. Moreover, Smith
has failed to carry his burden of showing that his counsel's representation fell
outside the range of reasonably professional assistance. And, even assuming
arguendo deficient performance by defense counsel, Smith has not shown any
resulting prejudice. He has not shown that a reasonable probability exists that
the outcome of the case would have been different. Accordingly, Smith is not
entitled to federal habeas relief on the claim raised in Ground One.

## B. Ground Two

As Ground Two, Smith contends his trial counsel was ineffective when
he failed to move for a judgment of acquittal on the issue of consent. See
Petition at 16-27. Smith raised a substantially similar claim in his amended
Second Rule 3.850 Motion. See Doc. 16-30 at 10-12. The postconviction court
denied relief on the claim, stating in pertinent part:

22

At trial, Defendant testified that, although he did not know the owner of the burglarized home, he had previously entered the house while repairing a broken out window sometime between November 24, 2008, and December 1, 2008. (Ex. F at 300-18.) On cross-examination, Defendant admitted to making a prior inconsistent written statement to detectives when he was first arrested, denying having ever entered the home. (Ex. F at 314-17.)

"Consent is an affirmative defense to burglary. A defendant has the initial burden of establishing the existence of such a defense, but thereafter the burden shifts to the state to disprove the defense beyond a reasonable doubt." Coleman v. State, 592 So. 2d 300, 301-02 (Fla. 2d DCA 1991) (citations omitted). Here, the State presented sufficient evidence to disprove consent beyond a reasonable doubt by, among other things, having the owner of the burglarized home testify that she did not give Defendant permission to be inside her home between November 24, 2008, and December 1, 2008. (Ex. F at 220-21.)

At closing, the State made a compelling argument as to the dubitable nature of Defendant's consent defense:

Consider [Defendant's] consciousness of guilt when determining whether or not he had an intent to commit an offense therein. Why would [Defendant] not tell Detective Reed I've got this friend, Charles Holiday, I went there to help repair the victim's home? Why deny knowing the victim? Why tell [Detective Reed] that he had never been inside the house? The reason, members of the jury, is because he didn't know what the outcome of the DNA results were. Detective Reed obtained this swab after he interviews [Defendant]. His control swab, before it was sent to FDLE, was obtained at the time of the interview. Not before. He had no idea about the results until today, until this case progressed, so he had to admit that he was inside the house. He had to. But that's not

23

> consistent with what he told Detective Reed and bear in mind this interview did take place on March 9 of 2010. That's almost, you know, it's 15 months or so from the time of the commission of the burglary. So even 15 months later [Defendant is] no[t] telling Detective Reed that, yes, I went to the house to do work. It's only here today, members of the jury.
>
> (Ex. F at 339-40.) Therefore, the State disproved Defendant['s] affirmative defense of consent, and any motion for judgment of acquittal based on consent would have been meritless. Accordingly, because counsel did not perform deficiently, this claim is denied.

See Doc. 16-31 at 4-5. The First DCA affirmed the denial of relief without a written opinion. See Doc. 16-35.

To the extent that the First DCA decided this claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Smith is not entitled to relief on the basis of this claim.

---

[10] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. There is a strong presumption in favor of an attorney's competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Smith must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense

counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

As an initial matter, it appears from the record that Smith's counsel did in fact move for a judgment of acquittal on the basis of Smith's testimony that he had consent to enter the home. According to the trial transcript, Smith's counsel moved for a judgment of acquittal three times during the trial. First, Smith's counsel moved for a judgment of acquittal at the close of the State's case, arguing that the State failed to prove Smith entered the home with the intent to commit a crime. Id. at 464-71. Second, after Smith testified in his own defense, id. at 477-95, his counsel moved for a judgment of acquittal in part on Smith's testimony "as to why he was inside the house." Id. at 496. Third, after the State's rebuttal witness testified, Smith's counsel renewed his motion on the basis of the first judgment of acquittal motion "as well as Mr. Smith's testimony."[11] Id. at 504. Because defense counsel moved for acquittal on the basis of Smith's trial testimony, Smith has failed to carry his burden of showing that his counsel's representation fell outside the range of reasonably professional assistance.

---

[11] Further, after the trial ended, Smith's counsel filed a motion for new trial on the basis that the trial court improperly denied his motions for a judgment of acquittal. See id. at 145-46, 148.

Further, "[a] judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party." See Criner v. State, 943 So. 2d 224, 225 (Fla. 1st DCA 2006). The State presented evidence to rebut Smith's trial testimony that he had consent to enter the home. The victim testified that she did not know Smith and did not give anyone permission to enter her residence while she was out of town. See Doc. 16-6 at 397-98. The victim's neighbor testified that he did not see anyone at the home, much less doing repairs, while the victim was out of town. Id. at 498-99. And a detective testified that Smith previously denied ever having been inside the home. Id. at 432. In light of this evidence, the record supports the postconviction court's conclusion that Smith was not entitled to a judgment of acquittal on the issue of consent. See Jones v. State, 790 So. 2d 1194, 1198 (Fla. 1st DCA 2001) (finding trial court properly denied motion for judgment of acquittal because although some evidence supported inference that defendant had consent to enter residence, victim's testimony that she did not invite defendant to residence was sufficient to rebut that defense to burglary).

On this record, Smith has failed to show that his counsel's representation was deficient. Even assuming arguendo deficient performance by defense counsel, Smith has not shown any resulting prejudice. Accordingly, Smith is not entitled to relief on the claim raised in Ground Two.

## C. Ground Three

As Ground Three, Smith argues that his trial counsel was ineffective for failing to advise him about his eligibility as a prison release reoffender. <u>See</u> Petition at 28-36. In his Reply, Smith withdraws the claim in Ground Three. <u>See</u> Reply at 12. Therefore, the Court deems Ground Three to be withdrawn and will not address it.

## D. Ground Four

As Ground Four, Smith argues his trial counsel was ineffective for failing to call Holiday as a witness. <u>See</u> Petition at 37-43. According to Smith, Holiday was available to testify at trial and would have corroborated Smith's trial testimony that the victim hired Holiday to do carpentry work at her home and Holiday gave Smith consent to enter the victim's home to assist him with the repairs. <u>Id.</u> at 37-38.

As in Ground One, Smith concedes that his ineffectiveness claim in Ground Four is unexhausted and procedurally barred. <u>See</u> Petition at 7, 37. Smith again argues that his failure to exhaust should be excused under <u>Martinez</u>. <u>Id.</u> at 37. The record before the Court establishes that this claim is procedurally barred since Smith failed to raise it in his state proceedings and cannot bring the claim now. Smith has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to

identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Smith's claim is not procedurally barred, it is too speculative to warrant federal habeas relief because he presents no evidence that Holiday would have testified as he contends. See Shaw v. United States, 729 F. App'x 757, 759 (11th Cir. 2018) ("[The Eleventh Circuit Court of Appeals has] stated that complaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and 'allegations of what a witness would have testified are largely speculative.'" (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978))); Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." (citing Johnson, 256 F.3d at 1187)). Moreover, Smith's allegations regarding Holiday's availability and his testimony are entirely unsubstantiated. "Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). Having failed to produce such evidence, relief on the claim in Ground Four is due to be denied.

29

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Smith seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

30

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.      If Smith appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of February, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-10
c:      Rickey Smith, #106448
        Counsel of record